IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL LAGUNA** | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-1569 |
| | : | |
| **CHESTER HOUSING AUTHORITY** | : | |
| | : | |

**McHUGH, J.**  July 25, 2022

**MEMORANDUM**

This is an employment action in which Plaintiff alleges that he was subjected to discrimination based on his disability, retaliated against for requesting a reasonable accommodation for that disability, and ultimately terminated from his position based on the disability in violation of the Americans with Disabilities Act, the Family and Medical Leave Act, and the Rehabilitation Act of 1973. Defendant moves to dismiss all of Plaintiff's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion will be denied in part and granted in part.

I. **Factual Allegations:**

Plaintiff Michael Laguna worked as an HVC Specialist[1] for Defendant Chester County Housing Authority from July 30, 2018 until his termination on September 23, 2021. Compl. ¶¶ 23-24, ECF 1.

In May 2020, Plaintiff was diagnosed with COVID-19 and was subsequently out of work for approximately seven months. Compl. ¶¶ 26-27. He was hospitalized and "came very close to death." *Id*. ¶ 28. After rehabilitation, he returned to work in November 2020 and began working

---

[1] This is a person with expertise in Housing Choice Vouchers for public housing. *See* Pl.'s Resp. at n. 1, ECF 9.

on a hybrid-remote basis. *Id*. ¶¶ 29-30. He alleges that, while he was out of work, the Defendant reassigned his caseload to four different employees and, upon his return, Plaintiff discovered that at least two of them had not completed assignments that should have been finished by October 2020, leaving Plaintiff with "a mountain of work to accomplish." *Id*. ¶¶ 32-35. He "had very little help when he returned and was scrambling to get things completed," and alleges that he was "set up to fail" when he returned. *Id*. ¶¶ 36-37. On top of this, he was "faced with hostility and treated in a cruel and demeaning manner." *Id*. ¶ 31.

Although Plaintiff had returned to work, he alleges that he was suffering from "negative side effects to his mental health" that worsened due to the "stress he was receiving from hostility at work." *Id*. ¶ 38. His doctor told him to stop working to attend to his mental health condition. *Id*. ¶ 39. Plaintiff supplied a note to Defendant's management and the Human Resources office stating that he needed a medical leave of absence from September 15, 2021 through September 27, 2021. *Id*. ¶ 40. During that time, Plaintiff received treatment at a mental health facility, where was instructed to stay out of work until October 6, 2021. *Id*. ¶ 41. On September 23, 2021, Plaintiff provided Defendant with a letter requesting a one-week extension to his original two-week medical leave. *Id*. ¶ 42. That same day, Plaintiff received a letter from Defendant terminating his employment because he was ineligible for FMLA leave and had exhausted his remaining sick leave. *Id*. ¶ 43. Plaintiff contends that this was inaccurate because he actually had 21 hours of accrued vacation time remaining. *Id*. ¶ 44.

Plaintiff alleges that his request for a three-week medical leave was reasonable and could easily have been accomplished. He further asserts that Defendant refused to accommodate his disability by refusing to keep his position open during his three-week medical leave of absence and that his termination was in retaliation for having requested additional leave.

Plaintiff brings a claim under Section 504 and the ADA for disability discrimination, retaliation, failure to accommodate, failure to engage in interactive process, and hostile work environment, *id*. ¶¶ 48-61, as well as a claim for FMLA Interference and Retaliation, *id*. ¶¶ 62-71. Defendant moves to dismiss Plaintiff's Complaint in its entirety under Rule 12(b)(6).

## II.   Standard of Review

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).

## III.   Discussion:

### a.   The Retaliation Claim:

Plaintiff's claims under the Rehabilitation Act and the ADA may be analyzed together, as "[w]hether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same." *McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr*., 62 F.3d 92, 95 (3d Cir. 1995). For either claim, Plaintiff must "plausibly allege three elements: that he was disabled, was qualified for the job, and suffered discrimination because of his disability." *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021). The burden of establishing a prima facie case "is not onerous," *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981), and presents a "low bar" for employment-discrimination plaintiffs, *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006). Defendant does not challenge Plaintiff's qualification for the job, but argues that Plaintiff fails to plausibly allege the first and third elements.

For the first element, the ADA and Rehabilitation Act provide that an individual has a disability if he (1) has "a physical or mental impairment that substantially limits one or more major

life activities of such individual"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1).  The 2008 ADA Amendments Act ("ADAAA") was enacted to clarify that the definition of "disability" should be construed "in favor of broad coverage of individuals ... to the maximum extent permitted." 42 U.S.C. § 12102(4)(A).  Therefore, courts must interpret the term "substantially limits" consistently with the liberalized purposes of the ADAAA.  *Id*. § 12102(4)(B).  The EEOC subsequently updated its regulations to provide that impairments lasting fewer than six months may be substantially limiting.  29 C.F.R. § 1630.2(j)(1)(ix).  Thus, under the current regulations, the duration of an impairment is just one factor to consider in determining whether an impairment substantially limits a major life activity. *See Summers v. Altarum Inst. Corp.*, 740 F.3d 325 (4th Cir. 2014).  For "regarded as" claims, the test is whether the employer "perceived" him as impaired, "whether or not the [perceived] impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A); *Gibbs*, 989 F.3d at 229.  Nonetheless, a plaintiff may not allege a perceived disability claim based on "impairments that are transitory and minor," that is, lasting six months or less.  42 U.S.C. § 12102(3)(B).

Here, Plaintiff pleads that he was discriminated against on the basis of a disability, or in the alternative, a perceived disability.  He alleges that he suffered from COVID for seven months and was hospitalized.  Upon his return to work, he pleads that he suffered from continuing negative side effects manifesting themselves as mental health problems that required treatment at a mental health facility.  Defendant argues that Mr. Laguna is "unable to state a prima facie case of disability discrimination as he has not alleged facts to show he meets the qualifications of a COVID-related disability."  Mot. to Dismiss at 5, ECF 7-1.  Although Plaintiff's allegations lack detailed specificity as to his diagnosis, he has nonetheless pleaded that he suffered from mental health

4

issues as a side effect from COVID that were severe enough to necessitate a medical recommendation for time off of work and treatment at a mental health facility. *See* 42 U.S.C. § 12102(2)(A) (major life activities include thinking and working). The Complaint may be marginal, but Plaintiff has alleged facts sufficient to show a physical or mental impairment that substantially limits one or more major life activities. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 213 (3d Cir. 2009) (holding that plaintiff who alleges disability and limitation is not required "at this early pleading stage, to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations."). Whether Mr. Laguna is disabled must await the development of a factual record.

For the third element, to allege plausible discrimination, Laguna need not have "detailed evidence," but need only give CHA fair notice of his claim and "raise the reasonable expectation that discovery will uncover evidence of discriminatory motive." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 267 (3d Cir. 2021) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Defendant argues that "Plaintiff did not suffer an adverse action in the form of termination and cannot truthfully allege same. Plaintiff was not terminated due to his disclosure of a disability but for his failure to perform his job with CHA." Mot. to Dismiss at 5-6, ECF 7-1. But, Plaintiff was terminated which is clearly an adverse action. Defendant's explanation for the termination apart from disability may be relevant at summary judgment, but here, Plaintiff has adequately alleged that he was terminated on the basis of his disability.

    b. <u>Failure to Accommodate/Failure to Engage in Interactive Process Claim:</u>

For a failure to accommodate claim, a plaintiff must allege that (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make

a good faith effort to assist; and (4) he could have been reasonably accommodated. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 320 (3d Cir. 1999). Defendant summarily argues that "Plaintiff has not asserted any facts to establish he requested a reasonable accommodation from CHA or that CHA failed to engage in the interactive process with Plaintiff." Mot. to Dismiss at 6. But, Plaintiff has alleged (1) he was disabled and that his employer knew of it; (2) he requested an additional week of leave to attend to his mental health as an accommodation; and (3) he was terminated the same day he made his request. Under some circumstances, a leave of absence for medical treatment may constitute a reasonable accommodation under the ADA. *See Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir.2004) ("[T]he federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned ... that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future."). Plaintiff has therefore stated a failure to accommodate claim.

    c. Retaliation Claim:

"To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citations omitted). "[U]nlike a general ADA discrimination claim, an ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff has a reasonable, good faith belief that [he] was entitled to request the reasonable accommodation [he] requested." *Sulima v. Tobyhanna Army Depot*, 602

F.3d 177, 188 (3d Cir.2010) (internal citation omitted). "Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation." *Id.*

Here, Plaintiff has sufficiently pleaded facts suggesting that he engaged in protected activity when he requested an extension of medical leave. There is no indication that the request was made in bad faith. Plaintiff's employment was terminated the same day that he made the request for leave, which could give rise to an inference of retaliation. *See Lauren W. ex rel. Jean W. v. Deflaminis,* 480 F.3d 259, 267 (3d Cir. 2007) (noting that "an unusually suggestive temporal proximity between the request for accommodation and allegedly retaliatory action" can establish requisite causal connection). Defendant argues that "Plaintiff was not terminated for requesting additional medical leave," but such a factual determination is not proper at this stage. Defendant's motion to dismiss Plaintiff's retaliation claim is therefore denied.

  d. <u>Hostile Work Environment Claim:</u>

For a hostile work environment claim, a plaintiff must show that

> (1)[he] is a qualified individual with a disability under the ADA; (2)[he] was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) [his employer] knew or should have known of the harassment and failed to take prompt effective remedial action."

*Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999). In examining alleged "severe or pervasive" discrimination in a workplace, the court must "look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (cleaned up); *see also Lescoe v. Pa. Dep't of Corr.-SCI Frackville*, 464 Fed. Appx. 50, 54 & n. 8 (3d Cir. 2012) (non-precedential) (applying that standard to an ADA claim).

Here, Plaintiff fails to state a claim. The Complaint does not identify any specific conduct by CHA or CHA staff that would lead to an inference of hostile work environment. While Plaintiff summarily alleges that he was subject to "an unlawful hostile work environment," such an allegation is conclusory and nothing more than a "threadbare recital of the elements of a cause of action" that is insufficient at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More fundamentally, Mr. Laguna states that he was "faced with hostility and treated in a cruel and demeaning manner," but does not allege that this treatment was based on his disability. In the absence of allegations connecting such treatment to his disability, Plaintiff has failed to state a hostile work environment claim and it will be dismissed without prejudice. *See e.g., Mercer v. Se. Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432, 444 (E.D. Pa. 2014), aff'd sub nom. *Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015) (non-precedential) (holding that where plaintiff made no claim of disability due to weight, harassment related to obesity could not amount to discriminatory hostile work environment).

    e. <u>FMLA Interference Claim:</u>

To make a claim of interference under the FMLA, a plaintiff must establish: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014); 29 U.S.C. § 2615(a)(1).

Defendants move to dismiss on the ground that Plaintiff has not pleaded that he was an eligible employee under the FMLA. It is true that Plaintiff's Complaint is somewhat contradictory and confused on this point. First, it alleges that Plaintiff is eligible under the FMLA because "he

was employed by Defendant for a period of at least twelve months; and worked at least 1,250 hours in the twelve-month period immediately preceding what the Defendant should have perceived as a request for FMLA leave." Compl. ¶ 63.  Next, it alleges that under the "calendar year approach. . . Plaintiff would *likely* been eligible for FMLA leave when he requested the same on September 23, 2021." (emphasis added). *Id.* ¶ 68.  Finally, it alleges that "even if Plaintiff had exhausted FMLA leave by September 2021, Defendant indicated in its letter to him that he would have been eligible on or about November 2, 2021, meaning he was fired within a month of being able to utilize leave." *Id.* ¶ 70.

These statements stand in some tension with each other. Defendant argues that Plaintiff "admits that he may not have been eligible for FMLA leave under November 2, 2021." Mot. to Dismiss at 9. But, I do not read the Complaint as admitting that he was not eligible until November. Instead, the Complaint clearly alleges that he was eligible at the time that he requested leave because he had worked at least 1,250 hours in the twelve-month period immediately preceding his request. *See* 29 U.S.C. § 2611(2) (defining eligible employee).  The language of "likely" eligible, which appears several paragraphs later, is confusing but, viewing all allegations in the light most favorable to Plaintiff, he has sufficiently alleged his eligibility.[2]  It appears that there is a disagreement between the parties as to Plaintiff's eligibility, which will be properly the subject of development through discovery. Therefore, Defendant's motion to dismiss will be denied as to the FMLA interference claim.

---

[2] I note that Plaintiff's alternate pre-eligibility argument fails. Plaintiff cites a line of cases that stand for the proposition that an employee may be protected where they request future leave before they attain FMLA eligibility, so long as the leave will take place post-eligibility. Pl.'s Resp. at 18; *see e. g., Sine v. Rockhill Mennonite Home*, 275 F. Supp. 3d 538 (E.D. Pa. 2017). Here, Plaintiff argues that even if he wasn't eligible for FMLA leave at the time of his request, he was "close" enough since Defendants admit that he would have become eligible on or about November 2, 2021, "which means he was fired about a month before being eligible to use leave." *Id*. The leave that he requested was for a month prior to him becoming eligible, and therefore unprotected.

9

      f.   <u>FMLA Retaliation Claim</u>:

To succeed on an FMLA retaliation claim, a plaintiff must show that "(1) [he] invoked [his] right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3) the adverse action was causally related to [his] invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.,* 691 F.3d 294, 301–02 (3d Cir. 2012). As discussed above, each of these elements has been pleaded, so Plaintiff has stated a claim for FMLA retaliation. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (holding that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee.").

**IV.  Conclusion**

For the reasons stated above, Defendant's Motion to Dismiss is granted as to Plaintiff's hostile work environment claim and denied as to Plaintiff's remaining claims.

                                                /s/ Gerald Austin McHugh
                                             United States District Judge