## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MIGUEL LAGUNA,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 22-1569** |
| | : | |
| **CHESTER HOUSING AUTHORITY,** | : | |
| **Defendant.** | : | |
| | : | |

**McHUGH, J.**                                                                       **March 17, 2023**

## MEMORANDUM

This is an employment discrimination action arising out of the termination of an employee after he requested medical leave.  Defendant previously moved to dismiss Plaintiff's claims on the merits, a motion that was largely unsuccessful.  After Plaintiff amended his complaint to add newly ripe discrimination claims under state law, Defendant moved to dismiss again – arguing for the first time that all Plaintiff's claims must be pursued through arbitration under a collective bargaining agreement.  I am persuaded that Defendant waived any potential right to arbitrate these claims by litigating this case for ten months, and I will therefore deny the motion to dismiss.

### I.      Relevant Background

Plaintiff Miguel Laguna was formerly employed by the Chester Housing Authority as a Housing Choice Voucher Specialist and was terminated in September 2021, on the same day he requested medical leave.  Am. Compl. ¶¶ 22-23, 41-42, ECF 4.  He subsequently filed this lawsuit against the Housing Authority bringing claims for discrimination, retaliation, and hostile work environment under the Americans with Disabilities Act, Rehabilitation Act, and Family and Medical Leave Act.  Compl., ECF 1.

Laguna filed his suit on April 22, 2022. *Id.* One month later, the Housing Authority moved to dismiss all of Laguna's claim, but solely on the merits. ECF 7. Arbitration was not raised anywhere in this motion. Two months later, I dismissed Laguna's hostile work environment claim but allowed the rest of his claims to proceed. ECF 12. The Housing Authority then answered the Complaint without raising any arbitration requirement as an affirmative defense. ECF 13; *see also* F.R.C.P. 8(c)(1). The parties were then ordered to meet and confer for the purpose of submitting a joint Rule 26(f) Report, ECF 14, after which a Case Management Order was entered. ECF 18; ECF 19. The parties exchanged initial disclosures and written discovery, *see* Def.'s Reply Br., ECF 32-1 at 4, and recently returned to the Court with an agreement to extend discovery by one and a half months. ECF 22. On January 24, the Housing Authority deposed Laguna, and in early February Laguna was granted leave to file his Amended Complaint, adding newly ripe claims under the Pennsylvania Human Relations Act. ECF 23.[1]

The pending motion to dismiss under Rule 12(b)(6) followed, with the Housing Authority now requesting that the case be dismissed or stayed in favor of arbitration. ECF 25. It relies upon the language of the Collective Bargaining Agreement (CBA) covering Laguna's employment and an Offer/Acceptance Agreement signed by Laguna acknowledging the CBA. *See generally* Def.'s Mem., ECF 25-1. Among other arguments opposing the motion, Laguna contends that the Housing Authority waived its right to arbitrate by actively participating in this case for ten months without ever mentioning the possibility of arbitration.[2] *See* Pl.'s Opp. Mem. at 6-16, ECF 28.

---

[1] These claims were identified in the original complaint, *see* ECF 1 at 1, but had not yet been exhausted with the Pennsylvania Human Relations Commission.

[2] Because I find that this argument alone defeats Defendant's Motion, I will not address Plaintiff's remaining arguments in opposition.

II.     **Legal Standard**

In the Third Circuit, a motion to compel arbitration is traditionally treated as a motion to

dismiss under Rule 12(b)(6).  *See Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 771

(3d Cir. 2013) (citing *Palcko v. Airborne Express*, Inc., 372 F.3d 588, 597 (3d Cir. 2004)).  Motions

to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established

standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

III.    **Discussion**

    A.  **Defendant has waived its right to arbitrate by participating in months of
        litigation.**

Courts must assess the enforceability of arbitration provisions in contracts the same as any

other contract.  *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713-14 (2022).  A party arguing

waiver of the right to arbitrate need not show prejudice.[3]  The sole question is whether a party

"intentionally relinquished or abandoned" the right to arbitrate a case.  *White v. Samsung Elecs.*

*Am., Inc.*, --- F.4[th] ---, No. 22-1162, 2023 WL 2379723, at \*4 (3d Cir. Mar. 7, 2023) (quoting

*Morgan*, 142 S. Ct. at 1713) (cleaned up).  To conduct this analysis, a "court focuses on the actions

of the party who held the right and is informed by the circumstances and context of each case."

*White*, 2023 WL 2379723 at \*4 (quoting *Morgan*, 142 S. Ct. at 1713, and *Gray Holdco, Inc. v.*

*Cassady*, 654 F.3d 444, 451 (3d Cir. 2011)) (cleaned up).  In *White*, the Third Circuit rejected an

attempt by an electronics manufacturer to compel arbitration in a suit brought by purchasers of

smart televisions.  The Circuit placed emphasis on the fact that the defendant must have known

---

[3] Before the Supreme Court issued *Morgan,* the circuit courts were split on this issue, with the Third Circuit
requiring a showing of prejudice.  *See Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925 (3d Cir.
1992).  The Supreme Court held that courts "may not devise novel rules to favor arbitration over litigation"
and must approach the issue simply as an issue of contract.  142 S. Ct. at 1713-14.

that plaintiffs' claims were arbitrable "from the outset of litigation," but nonetheless failed to inform the plaintiffs or the court of this fact until *after* it had filed a motion to dismiss on the merits, submitted several modifications of discovery deadlines, and engaged in "multiple instances of non-merits motion practice and acquiesced to the District Court's pre-trial orders." *White*, 2023 WL 2379723 at *4.

The Housing Authority has similarly waived its ability to compel arbitration here by actively participating in this litigation for approximately ten months with no mention of the arbitrability of Laguna's claims. Much like the defendant in *White*, the Housing Authority filed a motion to dismiss on the merits, and further suggested a willingness to submit to judicial process by docketing an array of other litigation documents – including the answer to the original complaint, its portion of a Rule 26(f) Meeting report, and stipulations setting and extending discovery and motions deadlines. The Housing Authority has also engaged in written discovery, and even deposed Laguna less than a month before it filed this Motion. The fact that the Housing Authority did not move to arbitrate Laguna's claims until *after* I mostly denied its motion to dismiss on the merits only further compounds its waiver of arbitration – in *White*, the Circuit held that the defendant's decision to seek arbitration "[o]nly after . . . it could not get the case fully dismissed before discovery" was one of several actions that "evince[d] a preference for litigation over arbitration." *Id.* Moreover, in *White,* there was arguably some challenge on the part of the manufacturer in determining which plaintiff owned which television, requiring it to trace whether the arbitration requirement applied. *See id.* at *1. Here, the Housing Authority indisputably knew from the outset of the case that its workforce was governed by a CBA with an arbitration provision. It argues that a deposition of the Plaintiff was necessary to cement its position, and to establish he had not "opted out" of the CBA. But such an argument is makeweight in the face of an individual

agreement assigned by the Plaintiff specifically acknowledging both the CBA and arbitration as the vehicle for resolving disputes.  There simply is no ambiguity in the documents that would support any need for delay, and to the extent that discovery is necessary to establish arbitrability, such discovery can be requested.  *See Guidotti*, 716 F.3d at 774.  As the Circuit noted in *White,* at a minimum Defendant had an obligation to assert that the dispute *may* be arbitrable.  *See* 2023 WL 2379723 at *4 (noting that the defendant "should have disclosed" the arbitrability of the dispute).

The Housing Authority claims that despite its active participation in these proceedings, a finding of waiver would nonetheless be inappropriate, because the parties have not conducted "years" of discovery nor engaged in "extensive" motions practice.  *See* ECF 32-1 at 6.  But this argument fails because it is grounded in cases applying the prejudice standard abrogated by the Supreme Court in *Morgan.  See e.g.*, *Ehleiter v. Grapetree Shores, Inc*., 482 F.3d 207, 223 (3d Cir. 2007) (citation omitted) (limiting waiver to cases "where the demand for arbitration came long after litigation commenced" and there was "extensive discovery").

Under *White* and *Morgan,* the actions of the party who holds the right to invoke arbitration constitute the central focus of the inquiry.  *See* 2023 WL 2379723, at *4.  Here, the Housing Authority has actively participated in the case and not *once* mentioned arbitration in its court filings over the course of ten months.  Its failure to notify Laguna or the Court of the potential for arbitration demonstrated a decision to commit to litigation and was "inconsistent with an intent to arbitrate," supporting a conclusion that it has waived its right to seek arbitration of this case.

/s/ Gerald Austin McHugh
United States District Judge